UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PENNY RICHARDSON and MARK GARNER, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 4:16CV00492 AGF ) |
| WIRELESS HORIZON, INC., RICHARD HEISLER, TROY HEISLER, ROBERT LINZOAIN, DAIMON RIPPLE, JASON COOPER, and JOSHUA HACKMAN, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This wrongful death case is before the Court on the motion Plaintiffs Penny Richardson and Mark Garner, parents of Decedent Seth Garner, to remand the case to the Missouri state court from which it was removed. Decedent and his co-worker Martin Powers died on March 25, 2014, as a result of injuries sustained when a communications tower they were dismantling in Kansas collapsed. For the reasons stated below, the motion to remand will be granted.

## PROCEDURAL AND FACTUAL BACKGROUND

For purposes of the motion before the Court, the record establishes the following. At the time of the collapse, Decedent, Powers, and the individual Defendants were employed by Wireless, which was a subcontractor working on behalf of Union Pacific Railroad Company ("Union Pacific"), the owner of a communications tower in Kansas. Wireless was contracted to demolish the tower. The contract was signed by Wireless' president, Defendant Richard Heisler. Defendant Troy Heisler, the safety manager, trained the crews and inspected equipment off-site.

Defendant Robert Linzoain was the tower foreman/site supervisor with 20 years' experience. Defendant Daimon Ripple was the winch truck driver at the job worksite. Defendant Jason Cooper, a corporate vice-president and the project manager, was responsible for lining up vendors and delivering equipment and materials to the tower deconstruction site. And Defendant Joshua Hackman was the project administrator for the tower deconstruction project. The crew working at the job site dismantling the tower included Decedent and Powers, both of whom were climbers on the tower; Linzoain, the foreman; and Ripple, the winch operator. As part of the deconstruction process, the workers were disconnecting a ten-foot diameter dish located at an elevation of 240 feet, when a wire rope sling broke, causing the tower to collapse and Decedent and Powers to fall to the ground to their deaths.

Wireless filed a Report on Injury regarding Decedent with the Missouri Department of Labor and Industrial Relations, Division of Workers' Compensation. (Doc. No. 24-5.) A letter to Wireless from its worker's compensation insurance carrier dated March 25, 2014, regarding the claim related to Decedent, shows Kansas as the "Accident State," and Missouri as the worker's compensation "Benefit State." (Doc. No. 24-4.) And in an Answer to Claim for Compensation received by the Missouri Division of Workers' Compensation on April 18, 2014, related to the claim by Powers, Wireless admitted that with respect to the tower incident, Wireless and Powers "were operating under and subject to the terms and provisions of the Missouri Workers' Compensation Law." (Doc. No. 24-1.)

R. Heisler testified by deposition dated June 23, 2016, that all the workers' compensation benefits that applied to Powers and his family were through the Missouri Division of Workers' Compensation. (Doc. No. 24-8 at 4). He further testified that Wireless's employees were paid in

Missouri and subject to Missouri employment taxes, and that Wireless assigned its employees to various project sites from Missouri. (Doc. No. 24-8 at 16, 21, 29.)

**Prior Related Lawsuit**

On March 27, 2015, Plaintiffs in this case, both Missouri residents, filed an action in Missouri state court arising out of the incident against Union Pacific, Sabre Industries, Inc., Sabre Communications Corp. (collectively "Sabre"), Wireless, and John Does. The John Does were never served but were identified generally as employees of Wireless and co-employees of Decedent. Sabre was allegedly involved in the design of the tower in question. Plaintiffs asserted claims of negligent supervision, negligent hiring, strict liability, and/or negligent design against the defendants other than Wireless. Against Wireless, Plaintiff asserted one claim: conduct with the specific purpose of injury. *Garner v. Union Pac. R.R. Co.*, 4:15CV00733 AGF ("*Garner I*").

Union Pacific removed the action to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). Union Pacific asserted that that the $75,000 amount in controversy requirement for such jurisdiction was met, as well as the complete diversity requirement, as Plaintiffs and Decedent were citizens of Missouri, and Wireless, the only Missouri defendant, was fraudulently joined. The fraudulent joinder argument was based on the premise that the Court lacked jurisdiction over the sole claim against Wireless because that claim was subject to the exclusive jurisdiction of the Missouri or Kansas Workers' Compensation systems.

Plaintiffs moved to remand the case and on November 20, 2015, this Court denied the motion to remand. The Court concluded that Plaintiffs' claim against Wireless was precluded under Kansas' Workers' Compensation law, but possibly not under Missouri's. Under

Missouri's choice-of-law rules that apply a "most significant relationship test," the Court determined, based on the record before it, that the law of Kansas, as the place of injury, governed the case. The Court found that Wireless was fraudulently joined because Plaintiffs' claim against it was precluded by Kansas' Workers' Compensation law. The Court therefore denied Plaintiffs' motion to remand, and dismissed Wireless without prejudice. On February 16, 2016, the Court granted Plaintiffs' motion for voluntary dismissal of the remaining defendants without prejudice, and the case closed.

**The Present Lawsuit**

On March 8, 2016, Plaintiffs filed the present action in Missouri state court.[1] The complaint attempts to state claims for co-employee liability for wrongful death against R. Heisler, T. Heisler, Linzoain, Ripple, Cooper, and Hackmann; and a claim of conduct with the specific purpose of injury against Wireless. All parties except Linzoain are Missouri residents. Linzoain is a resident of Arizona. On April 8, 2016, Linzoain removed this action to this Court on the basis of diversity jurisdiction, averring that all the Missouri Defendants were fraudulently joined. Linzoain argues that there exists no basis in fact or law for the Court to exercise jurisdiction over Plaintiffs' claims for co-employee liability because these tort claims are barred by the exclusivity provision of the Kansas Worker's Compensation Act. Linzoain contends that this Court previously determined that any claims against Wireless relating to the work-related death of Decedent are within the exclusive jurisdiction of the Kansas Workers' Compensation system.

---

[1] A companion case based on Powers' death, with substantially identical issues, is currently pending before the Honorable John Bodenhausen. *Powers v. Wireless Horizon, Inc*., No. 4:16CV00491 JMB.

In support of their motion to remand, Plaintiffs argue that Defendants failed to prove that Plaintiffs' claims against the diversity-destroying Missouri Defendants have no reasonable basis in fact and law. Plaintiffs argue that Missouri choice-of-law principles dictate that Missouri law governs whether Plaintiffs may prevail against Wireless and the co-employee Defendants, as Decedent was a Missouri resident, Decedent's employment was centered in Missouri, a significant part of the tortious conduct leading to Decedent's death occurred in Missouri, Wireless is a Missouri corporation, and the parties fully expected Missouri Workers' Compensation law to apply to claims arising out of the incident at issue. Plaintiffs contend that when making the decision in *Garner I*, this Court did not have all the evidence showing the significant relationship Defendants had with Missouri, including the Report of Injury filed in Missouri by Wireless, and the admission by Wireless in the Answer to Claim for Compensation with respect to Powers' claim, and by implication, also Decedent's claim arising from the same incident.

In response, Defendants contend that the doctrine of collateral estoppel precludes Plaintiffs from relitigating the issues decided in *Garner I*, namely whether Kansas Worker's Compensation law applied, so as to preclude Plaintiff's claims against Wireless, and by implication, the co-employee Defendants.[2] Defendants contend that collateral estoppel applies because the issue decided in *Garner I* is the same issue presented in this case, namely fraudulent joinder; the prior adjudication resulted in a judgment on the merits of that issue; Plaintiffs, here the parties against whom collateral estoppel is asserted, were Plaintiffs in the earlier suit; and Plaintiffs had a full and

---

[2] Kan. Stat. Ann. § 44-501(b) imposes liability on an employer to pay workers' compensation benefits for an employee's accidental injuries arising out of and in the course of employment. In relevant part, the exclusive remedy provision states: "Except as provided in the workers' compensation act, no employer, or other employee of such employer, shall be liable for any injury for which compensation is recoverable under the workers compensation act . . . ." Id.

fair opportunity to litigate the issue in *Garner I*. In the alternative, Defendants contend that Kansas law should govern based on several factors showing Kansas has the most significant relationship to Plaintiffs' tort claims, including that the place of injury was in Kansas, and the place of the co-employee's alleged misconduct was primarily in Kansas, including the inspection and selection of the sling.

In reply, Plaintiffs argue that collateral estoppel does not apply because there are new claims, new parties, new parties' conduct and contacts, and Plaintiffs did not have a full and fair opportunity to investigate or to litigate the relevant issues in *Garner I* inasmuch there was no opportunity for discovery. Plaintiffs also argue that there was no a final judgment on the merits in *Garner I*. As to the application of the most-significant-relationship test, Plaintiffs argue that the Court must evaluate the contacts according to their relative importance with respect to the particular issue in dispute – here, which state's Worker's Compensation law applied.

## **DISCUSSION**

Interesting and close questions are presented both as to the application of collateral estoppel to this case, and the choice-of-law issue. But the Court believes that a doctrine neither side mentions is properly invoked here to resolve Plaintiffs' motion to remand – the "mutual defenses doctrine." This doctrine provides that "defenses [including state law defenses such as collateral estoppel] common to both diverse and nondiverse defendants cannot support a fraudulent joinder claim." *Huckaby v. Gans & Smith Ins. Agency, Inc.*, 293 F. Supp. 2d 715, 717 (E.D. Tex. 2003). As explained by the Seventh Circuit in *Walton v. Bayer Corp.*, 643 F.3d 994 (7th Cir. 2011),

> a plaintiff can defeat the fraudulent-joinder exception to the requirement of complete diversity of citizenship by proving that his claim against the nondiverse defendant is no weaker than his claim against the diverse defendants. Especially if the claims are identical, the diverse defendants really are just arguing that the suit has no merit, period. And that is a ground not for removal but for asking the

court in which the suit was filed—the state court—to dismiss the suit. *Id*. at 1001. In such a situation, the federal district court to which the case was removed should remand the case to the state court. *Huckaby*, 293 F. Supp. 2d at 721. Although the Eighth Circuit has not specifically recognized this rule, other circuits have, and none appear to have rejected it. *See McGinty v. Player*, 396 F. Supp. 2d 593, 598 (D. Md. 2005) ("[T]hree circuits have recognized a 'common defenses' rule, which provides that when a nonresident defendant's showing that there is no reasonable basis for predicting that state law would allow recovery against an in-state defendant equally disposes of all defendants, there is no improper joinder of the in-state defendant".) (citations omitted).

Remand seems especially appropriate here. As Plaintiffs' correctly note, under Missouri choice-of-law rules, a court "is not bound to decide all issues in the case under the local law of one state. As such, the most significant relationship test is applied individually to each particular issue." *Harbison v. Rich Gullet & Sons, Inc*., No. 4:13-CV-1138-SPM, 2015 WL 928370, at *3 (E.D. Mo. Mar. 4, 2015) (applying the most-significant-relationship test to the question of which state's workers' compensation law governed the case; quoting *In re Nuvaring*, 957 F. Supp. 2d 1110, 1113 (E.D. Mo. 2013)). Given the additional evidence presented in the context of this case that was not before the Court in *Garner I*, the Court might have reached a different conclusion in the prior case on the choice-of-law question regarding which state's workers' compensation law applied, had that evidence been presented therein.

Moreover, removal statutes are strictly construed, and any doubts about the propriety of removal and the existence of federal jurisdiction are to be resolved in favor of remand. *Dahl v. R.J. Reynolds Tobacco Co*., 478 F.3d 965, 968 (8th Cir. 2007). Here, as noted above, close questions with respect to choice of law, whether Plaintiffs' claims are barred, and collateral

estoppel are presented.  The Missouri courts are in the best position to resolve these issues and determine whether Plaintiffs' state law claims are precluded.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion to remand this case to the state court in which it was filed is **GRANTED**, and the Clerk's Office shall take all necessary steps to effectuate the remand.  (Doc. No. 23.)

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 8th day of February, 2017.